# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

JOHN SLOMANSKI and
MARGARET BRUSEWITZ,

  *individually and on behalf of all others similarly situated,*

                     **Plaintiffs,**

              **v.**                              **Case No. 20-CV-956**

**ALLIANCE COLLECTION AGENCIES, INC.,**

                     **Defendant.**

---

## DECISION AND ORDER

---

       Plaintiffs John Slomanski and Margaret Brusewitz have filed a class action complaint alleging that Defendant Alliance Collection Agencies, Inc., sent them (and other class members) debt collection letters that violate the Fair Debt Collection Practices Act (FDCPA) and the Wisconsin Consumer Act (WCA). Alliance has moved to dismiss the complaint for lack of standing and for failure to state a claim. All parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). (*See* ECF Nos. 5, 11.) The motion is fully briefed and ready for resolution.

## BACKGROUND

In 2019 Alliance sent debt collection letters to, among others, Slomanski and Brusewitz concerning alleged debts they incurred for medical services. (ECF No. 8, ¶¶ 12-15, 37-40.) The Slomanski letter listed two creditors, Aurora Health Care Metro Inc. and Aurora Medical Group Inc., and the "amount owed" for each account:

| Creditors: | Amount Owed: |
|---|---|
| AURORA HEALTH CARE METRO INC | 0.00 |
| AURORA MEDICAL GROUP INC | 651.37 |
| TOTAL AMOUNT DUE: | $651.37 |

(*Id.*, ¶¶ 16-17 (citing ECF No. 1-1).) The letter further stated:

> The account(s) listed above with our agency have not been paid in full.
>
> We have been authorized by our client to refer the account(s) listed above to an attorney for the purposes of initiating a lawsuit against you.

(*Id.*, ¶¶ 26-27.)

The Brusewitz letter listed multiple creditors and the "total balance" for each account:

### * * * LIST OF ACCOUNTS * * *

| CREDITOR | SERVICE DATE | REFERENCE NUMBER | TOTAL BALANCE |
|---|---|---|---|
| AURORA HEALTH CARE MET | 02/18/15 | 8378 | 0.00 |
| AURORA HEALTH CARE MET | 06/30/15 | 1230 | 955.78 |
| AURORA HEALTH CARE MET | 09/22/16 | 1900 | 15.00 |
| AURORA HEALTH CARE MET | 09/09/16 | 3283 | 15.00 |
| AURORA HEALTH CARE MET | 11/04/16 | 3291 | 84.53 |
| AURORA HEALTH CARE MET | 05/06/16 | 3299 | 228.47 |
| AURORA HEALTH CARE MET | 08/12/16 | 3307 | 1,475.00 |
| AURORA HEALTH CARE MET | 03/02/17 | 6570 | 362.64 |
| AURORA HEALTH CARE MET | 03/23/17 | 6577 | 362.64 |
| AURORA HEALTH CARE MET | 07/20/17 | 4847 | 15.00 |
| AURORA HEALTH CARE MET | 08/19/18 | 5921 | 80.00 |
| AURORA MEDICAL GROUP I | 11/04/16 | 3275 | 7.64 |
| LAKESHORE MEDICAL CLIN | 03/21/17 | 5569 | 15.00 |
| | | GRAND TOTAL | $3,616.70 |

(ECF No. 8, ¶¶ 41-42 (citing ECF No. 1-2).)

The plaintiffs' amended complaint alleges that "[a]n account balance of $0.00 is inherently confusing and ambiguous, especially in conjunction with language that the accounts 'have not been paid in full' and that the accounts may be referred to an attorney to file a lawsuit." (ECF No. 8, ¶ 20.) "A consumer receiving a dunning letter stating that it is collecting an account with a balance of zero would believe that the actual balance of the account is a number greater than zero." (*Id.*, ¶ 21.) "A collection agency's reference to a $0.00 account balance is also confusing and misleading as to whether the collection agency is reporting the account to credit bureaus as a collection account and would not know how, or whether, she should dispute the 'debt.'" (*Id.*, ¶ 24.)

The amended complaint alleges that Slomanski and Brusewitz were confused by the letters they received, and an unsophisticated consumer would have been confused as well. (ECF No. 8, ¶¶ 35-36, 45-46.) The plaintiffs further allege that "[c]ontacting a consumer to collect a $0.00 balance is harassment and taking action by sending debt collection letters that cannot legally be taken because, by definition, no debt exists." (*Id.*, ¶ 23.) Likewise, the Slomanski letter "is misleading and confusing on its face, as it threatens to sue the consumer despite one of the listed accounts having a balance of zero." (*Id.*, ¶ 19.) The amended complaint alleges in the alternative that, "if a debt does exist and Alliance has incorrectly represented the balance to be zero, then Alliance has misrepresented the 'character, amount, or legal status' of the debt." (*Id.*, ¶ 25.)

3

The plaintiffs also take issue with the language in the Slomanski letter indicating that Alliance was authorized by its client to refer the account(s) listed in the letter to an attorney for the purpose of initiating legal action. According to the amended complaint, "an unsophisticated consumer would understand [this] representation . . . to mean that Alliance had been authorized to direct litigation against the consumer with respect to the accounts stated in [the Slomanski letter]." (ECF No. 8, ¶ 28.) That representation "is confusing and misleading on its face. As of August 19, 2020, no legal proceedings were filed in connection with any of the accounts stated in [the Slomanski letter]." (*Id.*, ¶ 29.) The plaintiffs allege, upon information and belief, that "Alliance would not direct any litigation filed against [Slomanski] respecting this debt[,] and the representation that the creditor has authorized Alliance to direct litigation is false and misleading because Alliance is not the real party in interest under Wisconsin law." (*Id.*, ¶ 30.) According to the plaintiffs, "[t]he false representation that Alliance would be directing the litigation is a material false statement." (*Id.*, ¶ 31.)

On June 25, 2020, the plaintiffs filed a putative class action against Alliance, alleging violations of the FDCPA, 15 U.S.C. §§ 1692–1692p, and the WCA, Ch. 421–27, Wis. Stats. (*See* ECF No. 1.) The matter was randomly assigned to this court. On August 19, 2020, the plaintiffs filed an amended complaint. (*See* ECF No. 8.) The amended complaint states four causes of action. In Counts I and II the plaintiffs allege that Alliance violated the FDCPA and the WCA by attempting to collect an amount owed of $0.00. (*Id.*,

4

¶¶ 67-75.) In Counts III and IV Slomanski alleges that Alliance violated the FDCPA and the WCA by falsely indicating that Alliance was authorized to direct litigation against him. (*Id.*, ¶¶ 76-84.) On September 2, 2020, Alliance filed a motion to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). (*See* ECF No. 9.)

## LEGAL STANDARDS

According to Fed. R. Civ. P. 8(a)(1), "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the grounds for the court's jurisdiction." A motion to dismiss for lack of standing under Fed. R. Civ. P. 12(b)(1) "challenges the jurisdiction of this court of the subject matter related in the complaint." *Coal. to Save the Menominee River Inc. v. U.S. Envtl. Prot. Agency*, 423 F. Supp. 3d 560, 565 (E.D. Wis. 2019). "To survive a Rule 12(b)(1) motion, the plaintiff must establish that the jurisdictional requirements have been met." *Coal. to Save the Menominee River*, 423 F. Supp. 3d at 565 (citing *Schaefer v. Transp. Media, Inc.*, 859 F.2d 1251, 1253 (7th Cir. 1988)). A court reviewing a facial challenge to its jurisdiction, like the one here, must simply "look to the complaint and see if the plaintiff has sufficiently *alleged* a basis of subjective matter jurisdiction." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)) (emphasis in original). If this review shows that subject-matter jurisdiction is lacking, "the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

5

According to Fed. R. Civ. P. 8(a)(2), "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." A motion to dismiss under Fed. R. Civ. P. 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "To survive a motion to dismiss, a complaint must 'state a claim to relief that is plausible on its face.'" *Zemeckis v. Global Credit & Collect. Corp.*, 679 F.3d 632, 634-35 (7th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim satisfies this pleading standard when its factual allegations 'raise a right to relief above the speculative level.'" *Zemeckis*, 679 F.3d at 635 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). When analyzing a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *Johnson v. Enhanced Recovery Co.*, 961 F.3d 975, 980 (7th Cir. 2020) (citing *Heredia v. Capital Mgmt. Servs., L.P.*, 942 F.3d 811, 814 (7th Cir. 2019)).

## DISCUSSION

Alliance moves to dismiss the amended complaint for lack of standing and for failure to state a claim upon which relief can be granted.

## I.   Standing

The judicial power of the United States extends only to "cases" and "controversies." U.S. Const. art. III, § 2; *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

6

Rooted in this limitation on the judicial power is the doctrine of standing, which "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo*, 136 S. Ct. at 1547 (citations omitted). "The elements of standing are well settled: the plaintiff must allege an injury in fact that is traceable to the defendant's conduct and redressable by a favorable judicial decision." *Casillas v. Madison Ave. Assocs.*, 926 F.3d 329, 333 (7th Cir. 2019) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61(1992)). "In order to survive a challenge to standing, a plaintiff must plead sufficient factual allegations, that 'plausibly suggest' each of these elements." *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 886 (7th Cir. 2017) (quoting *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015)).

Alliance challenges the plaintiffs' pleading with respect to the first element of standing: an injury in fact. (*See* ECF No. 10 at 12.) "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560). A particularized injury is one that affects the plaintiff "in a personal and individual way." *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560 n.1). "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Spokeo*, 136 S. Ct. at 1548 (citing Black's Law Dictionary 479 (9th ed. 2009)). In other words, "concrete" is given "the usual meaning of the term—'real,' and not

'abstract.'" *Spokeo*, 136 S. Ct. at 1548 (citing Webster's Third New International Dictionary 472 (1971); Random House Dictionary of the English Language 305 (1967)).

"Concrete," however, does not necessarily mean "tangible." *Spokeo*, 136 S. Ct. at 1549. "Although tangible injuries are perhaps easier to recognize, [the Supreme Court has] confirmed in many of [its] previous cases that intangible injuries can nevertheless be concrete." *Id.* (citations omitted). "In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Spokeo*, 136 S. Ct. at 1549. Nevertheless, "the fact that Congress has authorized a plaintiff to sue a debt collector who 'fails to comply with any requirement [of the FDCPA],' 15 U.S.C. § 1692k(a), does not mean that [the plaintiff] has standing." *Casillas*, 926 F.3d at 333 (citing *Spokeo*, 136 S. Ct. at 1549 ("Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.")). An FDCPA plaintiff therefore "cannot satisfy the injury-in-fact element by alleging a 'bare procedural violation' that is 'divorced from any concrete harm.'" *Groshek*, 865 F.3d at 887 (quoting *Spokeo*, 136 S. Ct. at 1549). "Instead, the plaintiff must show that the statutory violation presented an 'appreciable risk of harm' to the underlying concrete interest that Congress sought to protect by enacting the statute." *Groshek*, 865 F.3d at 887 (citing *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 727 (7th Cir. 2016); *Spokeo*, 136 S. Ct. at 1549-50).

Alliance argues that the plaintiffs lack standing because they have failed "to allege *how* the challenged letters caused a concrete, particularized injury *to them*." (ECF No. 10 at 12 (emphasis in original).) In the amended complaint the plaintiffs allege that Alliance's debt collection letters were confusing and misleading as to the amount of the debt and the consequences of nonpayment. (*See* ECF No. 8, ¶¶ 19-22, 24-25, 29-31, 44.) The plaintiffs also allege that they were personally confused by the alleged misleading information. (*See id.*, ¶¶ 35, 45.) "Protecting consumers from misinformation is one of the 'concrete interest[s] that Congress sought to protect . . . under the FDCPA.'" *Untershine v. Encore Receivable Mgmt.*, Case No. 18-CV-1484, 2019 U.S. Dist. LEXIS 134377, at *8 (E.D. Wis. Aug. 9, 2019) (citations omitted). Thus, the plaintiffs have plausibly alleged that Alliance's actions harmed or posed a real risk of harm to their interests under the FDCPA.

Because the claimed violation here involves misinformation—i.e., a substantive violation of the FDCPA—and was allegedly accompanied by the plaintiffs' actual confusion, Alliance's reliance on *Casillas* is misplaced. *See Lavallee v. Med-1 Solutions, LLC*, 932 F.3d 1049, 1053-54 (7th Cir. 2019) (distinguishing *Casillas*); *Kinnick v. Med-1 Solutions, LLC*, 410 F. Supp. 3d 939, 941-43 (S.D. Ind. 2019) (same); *Wheeler v. Midland Funding LLC*, No. 15 C 11152, 2020 U.S. Dist. LEXIS 52409, at *6-11 (N.D. Ill. Mar. 26, 2020) (same); *Heisler v. Convergent Healthcare Recoveries, Inc.*, Case No. 16-CV-1344, 2020 U.S. Dist. LEXIS 44920, at *10-14 (E.D. Wis. Mar. 16, 2020) (same); *Africano-Domingo v. Miller & Steeno, P.C.*, No. 19 CV 401, 2020 U.S. Dist. LEXIS 7887, at *13-14 (N.D. Ill. Jan. 16, 2020) (same); *Degroot*

9

*v. Client Servs., Inc.*, Case No. 19-C-951, 2020 U.S. Dist. LEXIS 6677, at *6-9 (E.D. Wis. Jan. 15, 2020) (same); *Pierre v. Midland Credit Mgmt., Inc.*, Case No. 16 C 2895, 2019 U.S. Dist. LEXIS 146272, at *6-10 (N.D. Ill. Aug. 28, 2019) (same); *Oloko v. Receivable Recovery Servs., LLC*, Case No. 17-cv-7626, 2019 U.S. Dist. LEXIS 140164, at *4-7 (N.D. Ill. Aug. 19, 2019) (same); *Untershine*, 2019 U.S. Dist LEXIS 134377, at *7-10 (same); *Richardson v. Diversified Consultants, Inc.*, Case No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786, at *9-12 (N.D. Ill. July 17, 2019) (same); *Fondren v. State Collection Serv., Inc.*, Case No. 20-cv-100, slip op. at 4 n.2 (E.D. Wis. Aug. 27, 2020) (same).

Alliance maintains that a consumer's alleged confusion alone is insufficient to satisfy the injury-in-fact requirement. (*See* ECF No. 10 at 12-13; ECF No. 14 at 2-5.) To support this argument, Alliance primarily relies on *Cooper v. Atlantic Credit & Fin. Inc.*, 822 F. App'x 951 (11th Cir. 2020), a recent, unpublished decision by the Court of Appeals for the Eleventh Circuit. In *Cooper* a consumer challenged two debt collection letters that purportedly "overshadowed" the validation notice required by 15 U.S.C. § 1692g(a). *Cooper*, 822 F. App'x at 952. The district court dismissed the consumer's complaint for failure to state a claim. *Id.* at 953.

On appeal, the Eleventh Circuit vacated that dismissal and remanded with instructions to dismiss the case for lack of subject-matter jurisdiction. *Id.* at 952. The court held that, "under [Eleventh Circuit precedent]," the consumer's alleged confusion about her statutory rights to dispute the debt and seek validation, "absent something more,

10

[was] insufficient to establish that [the consumer] had standing to bring her claim." *Id.* at

954. The court explained,

> [The consumer] does not allege that, without the purportedly confusing
> language in the second letter, she would have disputed the debt or sought
> validation of the debt within the thirty-day validation period, that she had
> any doubt regarding the validity of the debt, or that she would have
> accepted one of the payment options in the second letter. Nor does she
> allege that she suffered any harm beyond the alleged statutory violations,
> or that [the debt collectors] ever made any further attempts to collect the
> debt at issue any time after the . . . second letter, prior to the filing of the
> complaint.

*Id.* at 954-55.

*Cooper* involved an overshadowing claim under § 1692g, while the plaintiffs here

allege that Alliance's debt collection letters were misleading under § 1692e. The risk of

harm is arguably greater when a debt collector misrepresents the amount of the debt and

the consequences of nonpayment than when it merely overshadows a validation notice.

*See Untershine*, 2019 U.S. Dist. LEXIS 134377, at *9-10 (suggesting that the risk of harm

was arguably less appreciable for consumer's overshadowing claim compared to her

misrepresentation claim).

Moreover, the *Cooper* court emphasized that its decision was compelled by binding

Eleventh Circuit precedent. Alliance has not asserted that the Court of Appeals for the

Seventh Circuit follows the Eleventh Circuit's approach. Indeed, prior to *Spokeo*, several

Seventh Circuit decisions "found, or assumed, that standing exists when the dunning

letter allegedly violates § 1692e." *See Gomez v. Cavalry Portfolio Servs., LLC*, 962 F.3d 963,

11

967 (7th Cir. 2020) (collecting cases but acknowledging that the court has not yet analyzed whether those prior decisions are consistent with *Spokeo*).

Moreover, since the Supreme Court's *Spokeo* decision, at least two district courts in this circuit have determined that a consumer has standing even if she did not allege that she relied on the alleged misinformation in a collection letter. *See Wheeler*, 2020 U.S. Dist. LEXIS 52409, at *10 ("Even if [the plaintiff] never had any intention of challenging his debt, that he was the subject of a 'false, deceptive, or misleading representation or means in connection with the collection of any debt' is enough to confer standing."); *Heisler*, 2020 U.S. Dist. LEXIS 44920, at *13-14 ("The deprivation of [the correct name of the creditor] can itself inflict a concrete injury; [The plaintiff] does not need to allege that he would have taken any different action had the alleged violation not occurred."). *But see Markakos v. Medicredit, Inc.*, No. 19 C 7723, 2020 U.S. Dist. LEXIS 122337, at *3 & n.1 (N.D. Ill. July 13, 2020) (holding that confusion is not enough to confer Article III standing in the absence of the consumer's reliance on the allegedly misleading information).

Related to its argument that confusion alone is not enough, Alliance suggests that the plaintiffs needed (but failed) to allege that the debt collection letters *increased* their level of confusion. (*See* ECF No. 14 at 2-3.) However, the case Alliance relies upon to support this argument—*Durkin v. Equifax Check Services*, 406 F.3d 410, 415 (7th Cir. 2005)—was discussing the level of confusion needed to prove an FDCPA violation. The

12

Seventh Circuit in *Durkin* did not hold that increased confusion, in contrast to mere confusion, is required to meet the injury-in-fact element of standing.

Accordingly, the plaintiffs have pleaded sufficient factual allegations that plausibly suggest each of the elements of standing.

## II.  Failure to state a claim

"The Fair Debt Collection Practices Act is designed to protect consumers from abusive and unfair debt collection practices." *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 320 (7th Cir. 2016) (citing 15 U.S.C. § 1692(e); *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1059 (7th Cir. 2000)). To accomplish that goal, § 1692e "broadly prohibits the use of any 'false, deceptive, or misleading representation or means in connection with the collection of any debt.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 367 (7th Cir. 2018) (quoting 15 U.S.C. § 1692e). "Along with this general prohibition, the statute lists specific examples of prohibited conduct." *Id.* The plaintiffs allege that Alliance's letters violated three of these specific examples:

- The false representation of the character, amount, or legal status of any debt;

- The threat to take any action that cannot legally be taken or that is not intended to be taken; and

- The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

(*See* ECF No. 8, ¶¶ 70, 79 (citing 15 U.S.C. §§ 1692e(2)(a), 1692e(5), and 1692e(10)).)

13

To state a claim under § 1692e the plaintiffs must allege that Alliance's letters "would materially mislead or confuse an unsophisticated consumer." *Boucher*, 880 F.3d at 366. "The 'unsophisticated consumer' isn't a dimwit." *Wahl v. Midland Credit Mgmt.*, 556 F.3d 643, 645 (7th Cir. 2009). "She may be uninformed, naive, [and] trusting, . . . but she has rudimentary knowledge about the financial world and is capable of making basic logical deductions and inferences . . . [.]" *Id.* (internal citations and quotation marks omitted). Likewise, although an unsophisticated consumer "may tend to read collection letters literally, [she] does not interpret them in a bizarre or idiosyncratic fashion." *Pettit*, 211 F.3d at 1060 (citations omitted). A misleading or confusing statement is material only if it inhibits a consumer's ability "to choose intelligently." *See Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757 (7th Cir. 2009).

The Seventh Circuit has "cautioned that a district court must tread carefully before holding that a letter is not confusing as a matter of law when ruling on a Rule 12(b)(6) motion because 'district [court] judges are not good proxies for the 'unsophisticated consumer' whose interest the statute protects.'" *Boucher*, 880 F.3d at 367 (quoting *McMillan v. Collection Prof'ls., Inc.*, 455 F.3d 754, 759 (7th Cir. 2006)). Thus, "dismissal is only appropriate in 'cases involving statements that plainly, on their face, are not misleading or deceptive.'" *Boucher*, 880 F.3d at 366 (quoting *Marquez v. Weinstein, Pinson & Riley, P.S.*, 836 F.3d 808, 814-15 (7th Cir. 2016)).

14

The WCA is "the Wisconsin counterpart to the FDCPA." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 345 (7th Cir. 1997). One of the Act's stated purposes is "[t]o protect customers against unfair, deceptive, false, misleading and unconscionable practices by merchants." Wis. Stat. § 421.102(2)(b). Among other things, the WCA prohibits debt collectors from "[c]ommunicat[ing] with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer," § 427.104(1)(g), engaging in conduct "which can reasonably be expected to threaten or harass the customer or a person related to the customer," § 427.104(1)(h), claiming or attempting or threatening "to enforce a right with knowledge or reason to know that the right does not exist," § 427.104(1)(j), and "[t]hreaten[ing] action against the customer unless like action is taken in regular course or is intended with respect to the particular debt," § 427.104(1)(L).

The plaintiffs allege that Alliance violated the FDCPA and the WCA by attempting to collect an amount owed of $0.00 from both Slomanski and Brusewitz and by falsely indicating that Alliance is authorized to direct litigation against Slomanski. Because the parties agree that the FDCPA and WCA claims should be analyzed together (*see* ECF No. 10 at 14 n.5; ECF No. 13 at 9), the court will follow their lead and focus its discussion on the FDCPA claims.

## A. Slomanski: zero-balance account notation

The Slomanski letter lists two accounts, including one with an "amount owed" of "0.00," and states that "[t]he accounts listed above with our agency have not been paid in

full" and that "[w]e have been authorized by our client to refer the account(s) listed above to an attorney for the purposes of initiating a lawsuit against you." (ECF No. 1-1.)

According to the amended complaint, the zero-balance notation in the Slomanski letter is misleading and confusing in violation of 15 U.S.C. § 1692e and Wis. Stat. § 427.104. (*See* ECF No. 8, ¶¶ 67-75.) Specifically, the plaintiffs allege that this letter "is confusing and misleading on its face, as it threatens to sue the consumer despite one of the listed accounts having a balance of zero." (*Id.*, ¶ 19.) They further allege that "[a]n account balance of $0.00 is inherently confusing and ambiguous, especially in conjunction with language that the accounts 'have not been paid in full' and that the accounts may be referred to an attorney to file a lawsuit." (*Id.*, ¶ 20.) "A consumer receiving a dunning letter stating that it is collecting an account with a balance of zero would believe that the actual balance of the account is a number greater than zero." (*Id.*, ¶ 21.) "A collection agency's reference to a $0.00 account balance is also confusing and misleading as to whether the collection agency is reporting the account to credit bureaus as a collection account and would not know how, or whether, she should dispute the 'debt.'" (*Id.*, ¶ 24.) The plaintiffs also allege that "[c]ontacting a consumer to collect a $0.00 balance is harassment and taking action by sending debt collection letters that cannot legally be taken because, by definition, no debt exists." (*Id.*, ¶ 23.) In the alternative, the plaintiffs allege that, "if a debt does exist and Alliance has incorrectly represented the balance to

16

be zero, then Alliance has misrepresented the 'character, amount, or legal status' of the debt." (*Id.*, ¶ 25.)

Alliance argues that the amended complaint fails to state a claim with respect to the zero-balance notation in the letter to Slomanski because (1) a letter noting a zero balance on an account is not governed by the FDCPA; (2) the zero-balance notation would not confuse even the unsophisticated consumer; and (3) the zero-balance notation is immaterial. (*See* ECF No. 10 at 14-19.)

To be actionable, "the communication by the debt collector that forms the basis of the suit must have been made 'in connection with the collection of any debt.'" *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384 (7th Cir. 2010) (quoting 15 U.S.C. §§ 1692c(a)-(b), 1692e, 1692g). "The term 'debt' means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). The plaintiffs allege that the alleged debts referenced in the Slomanski letter "were incurred as the result of a transaction for personal medical services with an agreement to defer payment," (ECF No. 8, ¶ 13), and the letter clearly sought payment on the account(s) with a pending balance. For purposes of this motion, the court assumes without deciding that the reference in the letter to a zero-balance account is covered by the FDCPA.

17

Nevertheless, the zero-balance notation is plainly not misleading or confusing under § 1692e. Even an unsophisticated consumer would understand that no money was owed with respect to the account that had a zero balance and that only the account with a balance was "not paid . . . in full," may be referred to an attorney for legal action, and may be reported as a collection account. The letter supports this conclusion, as the "total amount due" equals the amount owed on the only the account that had a balance. (*See* ECF No. 1-1.) The plaintiffs' allegation that a consumer receiving such a letter would think the actual balance on the zero-balance account was a number greater than zero— i.e., that 0 ≠ 0—is the type of bizarre and idiosyncratic interpretation that not even an unsophisticated consumer would make.

The court might reach a different conclusion if the zero-balance account was the *only* account listed in the collection letter. In that situation, it's plausible that the unsophisticated consumer would wonder why she was receiving a collection letter for an account that had a zero balance and would not know what steps, if any, were needed to respond to the letter. But neither letter at issue in this lawsuit purported to be seeking to collect only on an account with a zero balance.

The zero-balance notation in the Slomanski letter is also immaterial. Although Slomanski alleges that he was personally confused by Alliance's letter (*see* ECF No. 8, ¶ 35), the amended complaint does not plausibly suggest that an unsophisticated consumer's ability to respond to the letter would be inhibited by listing all of the

18

consumer's accounts, including one that had a balance of zero. In other words, the zero-balance notation would plainly have no impact on the unsophisticated consumer's decision-making process.

In contrast to the plaintiffs' assertion (*see* ECF No. 13 at 19), the court did not need to resolve any disputed facts to conclude that the zero-balance notation is not misleading or confusing as a matter of law. For example, the court did not need to resolve how Alliance applied any payments Slomanski made or whether the zero-balance account was in fact paid in full. What the court has decided is simply that an unsophisticated consumer would understand that Alliance is not attempting to collect on the account with the zero balance. Accordingly, this is one of those rare cases where dismissal at the pleading stage is appropriate with respect to a § 1692e claim.

### B. Brusewitz: zero-balance account notation

If the zero-balance notation on the Slomanski letter is not materially misleading or confusing as a matter of law, then *a fortiori* neither is the zero-balance notation on the Brusewitz letter. The Brusewitz letter lists thirteen accounts, the "total balance" for each account, and the "grand total" for all accounts. (*See* ECF No. 1-2.) The total balance on one of the accounts is "0.00"; the grand total and the "amount due" equal the sum of the remaining twelve accounts (i.e., the accounts with a balance). (*See id.*) Unlike the Slomanski letter, however, the Brusewitz letter does not state that these accounts have not been paid in full or state that the accounts may be referred to an attorney for legal

19

action. (*See id.*) Without these additional statements, the plaintiffs' claim of confusion is even weaker than it is for the Slomanski letter. Accordingly, for the reasons discussed above, the plaintiffs have not plausibly alleged that the zero-balance notation on the Brusewitz letter plainly is materially misleading or confusing to an unsophisticated consumer.

### C. Slomanski: authorization to direct litigation

After listing the two accounts, the amount owed on each account, and the total amount due, the Slomanski letter stated, "We have been authorized by our client to refer the account(s) listed above to an attorney for the purposes of initiating a lawsuit against you." (*See* ECF No. 1-1.)

According to the amended complaint this statement is deceptive and misleading, in violation of 15 U.S.C. § 1692e and Wis. Stat. § 427.104. (*See* ECF No. 8, ¶¶ 76-84.) Specifically, the plaintiffs allege that an unsophisticated consumer would understand this statement "to mean that Alliance had been authorized to direct litigation against the consumer with respect to the accounts listed in [the Slomanski letter]." (*Id.*, ¶ 28.) According to the plaintiffs, this statement "is confusing and misleading on its face," as evidenced by the fact that, at the time the plaintiffs filed this lawsuit no legal proceedings had been filed in connection with any of the accounts listed in the Slomanski letter (*Id.*, ¶ 29.) The plaintiffs further allege, upon information and belief, that "Alliance would not direct any litigation filed against [Slomanski] respecting this debt[,] and the

representation that the creditor has authorized Alliance to direct litigation is false and misleading because Alliance is not the real party in interest under Wisconsin law." (*Id.*, ¶ 30.) According to the plaintiffs, "[t]he false representation that Alliance would be directing the litigation is a material false statement." (*Id.*, ¶ 31.)

Alliance argues that "no one could reasonably interpret the now-challenged letter to mean *Alliance* would 'direct litigation' against Plaintiff Slomanski, as he alleges." (ECF No. 10 at 20.) The court agrees. Even the unsophisticated consumer would interpret the statement to mean exactly what it says—that Alliance was authorized by the creditor to refer the unpaid account to an attorney for possible legal action. The statement says nothing about directing litigation. In fact, it doesn't even say that Alliance had referred the matter to an attorney or that Alliance was intending to do so. The statement simply informed the consumer that such authorization had already been given. Representing that Alliance had been authorized by the creditor to refer the matter to an attorney suggests that the creditor, not Alliance, was in charge of making the litigation decision. The plaintiffs attempt to read into this statement an interpretation that no reasonable unsophisticated consumer would make. Accordingly, the plaintiffs have not plausibly alleged that the referral-to-an-attorney statement on the Slomanski letter is materially misleading or confusing to an unsophisticated consumer.

21

**CONCLUSION**

**IT IS THEREFORE ORDERED** that Alliance's motion to dismiss the amended complaint (ECF No. 9) is **GRANTED**. The action is **DISMISSED**. The clerk of court shall enter judgment that the plaintiffs shall take nothing from their amended complaint.

Dated at Milwaukee, Wisconsin this 1st day of December, 2020.

_William E. Duffin_
WILLIAM E. DUFFIN
U.S. Magistrate Judge

22